# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MOSES STRYKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| THE CITY OF HOMEWOOD, | ) | |
| (a Municipal Corporation); | ) | JURY DEMAND |
| CHIEF JIM ROBERSON,( an individual); | ) | |
| (an individual); JASON DAVIS, | ) | |
| (an individual); BRIAN WAID, | ) | |
| (an individual); and FREDERICK BLAKE, | ) | |
| (an individual) | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

COMES NOW the Plaintiff, Moses Stryker, by and through his undersigned counsel of record, and avers as follows:

### *Parties*

1. Plaintiff, **Moses Stryker,** is an immigrant from Liberia, West Africa, and a "nationalized citizen" and permanent resident of the United States. Moses resides presently and at all times material to this Complaint in Atlanta, Georgia. Moses is married to his wife of 36 years and is the father the couple's five adult children. ("Plaintiff", "Moses" or "Mr. Stryker").

2.    Defendant, **City of Homewood,** is a municipal corporation located in Homewood, Alabama, and which duly organized the Homewood City Police Department ("HPD") and the police department's policies and procedures governing the duties and actions of its police officers. ("t**he City**" or **"Homewood"** )

3.    Defendant, **Jim Roberson,** is sued in his individual capacity in his supervisory capacity as the Chief of Police at HPD during the times material to this suit. ("**Chief Roberson**" or **"Roberson"**). As Homewood's Chief of Police, Roberson served as Davis's commanding officer. As such, Roberson was responsible to train, evaluate, supervise and discipline Davis. Roberson was also the person at HPD with final decision-making authority regarding the policies and customs implemented at HPD and followed by HPD officers. Finally, Roberson was responsible to ensure that Homewood Police officers and personnel obeyed the laws of the United States and of the State of Alabama.

4.    Defendant, **Jason Davis,** is sued in his individual capacity and was working in the line and scope of his duties as a patrol officer for HPD at all times material to this suit. ("**Officer Davis**" or "**Davis**").

5.    Defendant, **Bryan Waid,** is sued in his individual capacity and was

working in the line and scope of his duties as a patrol officer for HPD at all times material to this suit.   ("**Officer Waid**" or "**Waid**").

6.   Defendant, **Frederick Blake,** is sued in his individual capacity and was working in the line and scope of his duties as a patrol officer for HPD at all times material to this suit.  ("**Officer Blake**" or "**Blake**").

7.   All of the named Defendants are sued individually for damages, and are sued jointly and severally, for proximately causing one or more of the deprivations of rights and injuries to Plaintiff described hereafter in this Complaint.

## Jurisdiction and Venue

8.   The court has original jurisdiction of Plaintiff's federal claims in this matter pursuant to *28 U.S.C. §§ 1331* and *1343(a)(3).* Also, the court has supplemental jurisdiction over Moses' state law claims pursuant to *28 U.S.C. §1367(a).* Venue is proper pursuant to *28 U.S.C. §1391*.

9.   This is a civil action for money damages brought pursuant to:

a)   42 U.S.C. §§ 1983 and 1988;

b) The Fourth and Fourteenth Amendments to the United States Constitution;

c) Alabama law.

### *Color of State Law*

10. At the time of all relevant events, all defendants were acting under color of state law, meaning they were acting under the color of the statutes, regulations, policies and customs of the State of Alabama and/or the City of

### *Factual Allegations*

11. In the early morning hours of May 23, 2014, Plaintiff and Musie Ibedingl, a truck driver Moses was training, were making a delivery of goods to the Walmart Supercenter located in the Wildwood Shopping Center on Lakeshore Parkway in Birmingham, Alabama.

12. As they arrived at Wal-Mart, Ibedingl was driving.

13. Moses switched places with Ibendigl in the Wal-Mart parking lot when it became apparent Ibedingl could not maneuver the truck in the manner necessary to arrive at the loading dock.

14. As Moses took the wheel, a woman driving a small sedan pulled in front of the 18 wheel tractor-trailer and blocked the truck's path by parking her vehicle directly in front of the truck.

15. The woman claimed that his truck had side-swiped her car and that she had called the police.

16. Moses and Ibendigl stayed in their truck and awaited for the arrival of law enforcement.

17. Even though they were in the jurisdictional area for the Birmingham police department, Homewood police were dispatched to the scene. Officer Davis was on duty for Homewood and arrived several minutes later.

18. Davis told Stryker to move his truck to the back of the Wal-Mart lot and Moses asked if they could remain where they were since the parking lot was not well-lit in the back.

19. Davis expressed displeasure at being questioned by Moses and Moses complied by moving his truck.

20. Moses parked his truck in the back area the Wal-Mart lot as instructed approximately 100 feet from the parked car of the woman who claimed the truck swiped her vehicle.

21. Davis, Moses and Ibedingl conducted a walk-around inspection of Stryker's truck.

22. Following the inspection, Davis commented that he saw no evidence indicating that the truck had collided with another vehicle.

23.     Davis told Moses and Ibedingl to wait by the truck until Birmingham police arrived since the alleged accident occurred outside of Davis's jurisdiction.

24.     Moses returned to his truck to retrieve a camera from an "accident kit" in the truck provided by Swift Transportation, Inc. ("Swift"), the company for whom he was delivering freight.

25.     Swift's policy in the event of an accident required that the driver use the kit's disposable camera to document any alleged accident damage by photographing the vehicles involved.

26.     In accordance with Swift's instructions to drivers who are involved in a potential accident, Moses removed the camera from the kit with the intention of photographing the vehicles for the purpose of documenting the alleged accident.

27.     Moses began walking from his truck across the parking lot toward the woman's car to take a picture of its condition.

28.     Davis intercepted Moses as he went to photograph the woman's car and became irate when he saw Moses's camera in his hand.

29.     Though Moses had committed no crime, was not suspected of having committed a crime, and was no threat to anyone involved, Davis shouted at Moses to go back to his truck.

30.     Moses tried to explain to Davis that company policy required him to photograph any damage associated with an alleged accident, but in reply Davis

threatened Moses that if he said anything more Davis would "*lock [his] ass up*."

31. When Davis threatened to arrest Moses, Davis was not investigating a crime nor was Moses interfering with police business. Also, Moses had not committed a crime; was not suspected of having committed a crime; was not attempting to flee; was not a threat to anyone's safety; and was at liberty to act in a manner consistent with his employer's policy of photographing the involved vehicles while they waited for a Birmingham police officer to arrive and complete and accident report. Davis's threat to arrest Moses at that time was without any probable cause.

32. Moses put the disposable camera in his pocket and turned to go to his truck as ordered, but Davis suddenly drew his service revolver and pointed it directly at Moses's head and asked what Moses was reaching for in his pocket.

33. Moses told Davis he was merely putting the camera in his pocket and that he was going back to the truck as he was instructed.

34. Moses seeing Davis's service revolver pointed at him asked Davis "Are you going to shoot me?" When Davis put his gun away Moses turned away from Davis, and as Davis had instructed, began walking toward his truck.

35. Davis then shoved Moses from behind in the direction of his truck.

36. As Moses walked toward his truck, Davis discharged his Taser in to Moses' back delivering an electrical shock three times.[1] Moses fell to the ground.

37. After he was shocked by the Taser and fell, the Taser's leads became dislodged and Moses saw Davis reloading his Taser and assumed Davis intended to shock him again with the device.

38. Fearing for his life, Moses quickly crawled toward his truck[2].

39. When Moses reached his truck and began to climb the steps to the cab, Davis grabbed Moses from behind pulling him down the stairs of the truck to the running board.

40. Davis climbed up behind Moses and began striking him in the face and jaw with the butt-end of his sidearm and attempted to pull Moses away from the cab of the truck.

41. In the course of striking Moses in the head with his sidearm or some other blunt instrument, Davis fractured Moses's jaw and broke his glasses.

42. Moses managed to climb into the truck and lock the cab door and Ibedingl, who had been outside the truck all this time, climbed into the passenger side and closed his door.

---

[1] A "Taser" is a conducted electrical weapon that fires two dart-like electrodes that deliver an electrical shock which disrupts the target's voluntary control of muscles causing "neuromuscular incapacitation."

[2] Moses' legs were not working properly after he was initially tased and at first he could not stand up to walk.

43. Moses and Ibendigl intended to remain locked in the cab for their safety until the arrival of the Birmingham police.

44. In the truck, Moses was bleeding from his injuries to his face, jaw and back and feared for his personal safety.

45. Moses and Ibendigl kept their hands in plain view so Davis could see they were not holding weapons.

46. Davis broke the driver's side window of Stryker's truck, showering Stryker's face and eyes with fragments of shattered glass from the window.

47. Moses had difficulty seeing due to the debris from the glass in his eyes and sought assistance from Ibedingl to help him down from the passenger door of the truck's cab.

48. Defendants Waid and Blake arrived shortly after the time Davis broke the glass of the driver's side window.

49. Davis ran to the passenger side of the truck and forcibly pulled Moses from the vehicle injuring Moses's arm. The other officers arrived and assisted Davis in trying to drag Moses away from his truck.

50. Davis sprayed pepper spray into Moses's eyes.

51. Davis, Waid and Blake got Moses to the ground.

52.     Moses had glass and pepper spray in his eyes and cried out "I can't see" as Davis, Waid and Blake kicked and punched Moses about his body and stomped on his back causing injuries to Moses's spine.

53.     Moses was handcuffed and placed in a patrol car. While in the car, Moses pleaded with the officers for medical help for his broken jaw, back and eye injuries. One of the officers transported him to UAB Hospital for medical treatment.

54.     At UAB hospital emergency room staff removed pieces of glass from Moses's face and eyes and confirmed that Moses's mandible was badly broken and required emergency surgery.

55.     Moses's facial injuries required that he undergo an additional surgery to his jaw and his doctors wired his jaw shut for approximately eight weeks in order to allow it to heal.

56.     Moses also suffered injuries to at least one of the discs in his lower back and he has undergone multiple pain blocks and a surgical procedure in attempts to relieve his pain and allow some return to normal function in his hip and back.

57.     Due to his injuries, Moses has not been able to return to his job as a truck driver and will not be able to return to work again due to the permanent nature of his back injuries.

58. The use of force by the Individual Defendants was unnecessary, unwarranted and excessive.

59. The law was clearly established prior to this incident that unreasonable force applied upon an ordinary citizen or suspect violates an individual's rights guaranteed by the 4th Amendment to the Constitution.

60. The law was clearly established prior to this incident that a blow to the head of a citizen or criminal suspect may be considered deadly force and may not be used by a law enforcement officer unless:

    a. It is necessary to prevent their escape;

    b. The officer has probable cause to believe the suspect poses a serious threat of death or serious physical injury to officers or others.

61. The use of a blunt instrument (i.e. baton, firearm and/or a fist) to the head of a suspect by an officer constitutes the use of lethal force in that it carries the risk of serious and potentially deadly injury.

62. The Individual Defendants, including Davis, struck Moses in the head with their fists and with blunt instruments numerous times without justification.

63. The Individual Defendants' punches and strikes to Moses's head with a blunt instrument was intentional, willful, and with callous indifference to the consequences of their actions.

64.     The Individual Defendants, particularly Defendant Davis' acts, escalated the level of force unreasonably.

65.     At all times material hereto, the City of Homewood vested its Chief of Police, Defendant Roberson, and his designees with final policy making authority for the conduct of the operations of the police department, including the training, supervision and discipline of officers of the police department of the City of Homewood.

66.     As of the date of May 24, 2014, and for several years prior thereto, Defendant Roberson served as the chief of the Homewood Police Department and the chief policy maker for the department.

67.     It was the custom of Roberson and the City of Homewood to take little or no disciplinary action in cases of constitutional violations by its law enforcement officers.

68.     It was the custom of Roberson and City of Homewood to take little or no disciplinary action in cases of excessive force by its law enforcement officers.

69.     It was the custom of Roberson and the City of Homewood to honor and award intimidating and aggressive police officers.

70.     It was the custom of Roberson and the City of Homewood to ignore citizen complaints and fail to investigate citizen complaints of excessive force and unconstitutional conduct against officers.

71. It was the custom of Roberson and the City of Homewood to ratify unconstitutional conduct of its officers, including officers that unreasonably used excessive force, by failing to investigate use of force incidents, citizen complaints and known unconstitutional conduct.

72. It was the custom of Roberson and the City of Homewood to fail to discipline officers who committed unconstitutional acts against ordinary citizens and to fail to investigate use of force incidents and unconstitutional conduct.

73. Defendant Roberson failed to establish proper and adequate training and supervisory policies regarding the conduct of his officers and failed to properly screen, evaluate, supervise, discipline, train, retrain or appropriately terminate his officers.

74. Roberson failed to properly train or insure the proper training of the officers under his command, including the Individual Defendants, in the reasonable use of force, including the use of deadly force.

75. Defendant Roberson encouraged, condoned, acquiesced, tolerated, ratified, or failed to remedy the wrongful and unconstitutional acts of his subordinates.

76. Defendant Roberson failed to investigate, or otherwise approved each of hundreds of use of force incidents and/or complaints as "justified" each year and rarely disapproved of officer's conduct on average.

77.     Homewood police officers knew that use of force, including deadly force, would rarely be reviewed critically.

78.     Homewood police officers violated the constitutional rights of persons on a regular basis without fear of discipline or termination.

79.     Homewood police officers knew that the practice of warrantless seizures, arrests and/or use force upon persons without probable cause and who were not suspected of having committed a crime, was unconstitutional under the Fourth Amendment. In spite of their knowledge of their unconstitutional conduct, Homewood officers, including the Individual Defendants, maintained a widespread and established history of violating citizens' Fourth Amendment rights with the knowledge that their conduct would not be genuinely investigated by Roberson, and with the knowledge that they would not be disciplined.

80.     Homewood police officers used unreasonable force against citizens on a regular basis without fear of discipline or termination.

81.     Constitutional abuses, including wrongful seizures, detentions, arrests without probable cause and unreasonable use of force by Homewood police officers were widespread and long standing.

82.     In his several years as Chief of the Homewood Police Department, Roberson never seriously disciplined, and never terminated a police officer and rarely or never terminated a police officer for the use of excessive force.

83.    Roberson's conduct in failing to discipline or prosecute known incidents of officer misconduct and use of excessive force was in conscious disregard of the high risk that his subordinate officers would use excessive force in violation of citizen's federally protected rights.

84.    Upon information and belief, Davis is known to have engaged in other acts of excessive force and constitutional violations as a police officer for Homewood and other police departments where he worked before. Homewood and Roberson, therefore, were on notice of Davis' propensity to abuse his position as a law enforcement officer.

85.    Upon information and belief, Officer Blake is known to have engaged in other acts of excessive force and constitutional violations as a police officer for Homewood and other police departments.  Homewood and Roberson therefore were on notice of Blake's propensity to abuse his position as a law enforcement officer.

86.    Upon information and belief, Officer Waid is known to have engaged in other acts of excessive force and constitutional violations as a police officer for Homewood and other police departments.  Homewood and Roberson therefore were on notice of Waid's propensity to abuse his position as a law enforcement officer.

87. Chief Roberson and Homewood failed to train Defendant Davis properly in how and when the use of force was necessary, and in how and when force should be applied during traffic stops, accident investigations and routine patrol matters.

88. Due to his lack of training and supervision, Davis violated law enforcement standards  and Moses' constitutional rights  by using his Taser inappropriately without probable cause to arrest and when Moses was not suspected of committed a crime, was not attempting to flee, and was no threat to anyone's safety.

89. Due to his lack of training, Defendant Davis violated law enforcement standards and Moses' constitutional rights by tasing him in the back as Moses attempted to comply with Davis' orders to go to his truck.

90. Due to his lack of training, Defendant Davis violated law enforcement standards and Moses's constitutional rights by drawing his service revolver and pointing it at Moses without reasonable suspicion that Moses had committed a crime, without probable cause to arrest Moses, without reason to believe Moses was attempting to flee, and without Moses posing a threat to the safety of Davis or others.

91. Due to his lack of training, Defendant Davis violated law enforcement standards and Moses' Fourth Amendment rights by grabbing Moses and striking

Moses in the head or face with his fist and/or a blunt instrument without reasonable suspicion that Moses had committed a crime, without probable cause to arrest Moses, without reason to believe Moses was attempting to flee,  and without Moses posing a threat to the safety of Davis or others.

92.    Due to their lack of training, all Individual Defendants violated law enforcement standards and Moses Fourth Amendment Rights by throwing him to the ground and punching him in the face and head when Moses was not suspected of committing a crime, when the officers had no probable cause to effect his arrest, and when he posed no threat to the safety of officers.

93.    The Individual Defendants violated law enforcement standards by falsely describing their actions post-arrest when they falsely reported that Moses was aggressive, swung at an officer, and failed to comply with their orders and by falsely reporting when and how often they struck Moses in the head.

94.    Based on the Individual Defendants' false reports post-incident, Plaintiff was arrested and charged with resisting arrest, assault in the 3rd degree disorderly conduct, and refusal to comply with a lawful order. To defend himself against these false charges, Moses has been caused to spend money to pay for legal fees to hire an attorney to represent him against these charges. pay legal fees to defend himself.  to retain counsel to represent him to vindicate his rights in this action. Pursuant to the provisions of 42 U.S.C. §1988, Moses is entitled to an

award of reasonable attorney's fees and costs.

95.    As a direct, proximate and foreseeable result of the described and wrongful acts of the defendants, Moses suffered severe personal injuries and damages as described as follows:

a)    facial injuries and a broken jaw requiring surgery and wiring his mouth for 8 weeks;

b)    injuries to his back damaging his discs and vertebrae which required surgical intervention;

c)    emotional anguish and distress;

d)    pain and suffering;

e)    loss of income from work and loss of future income form work due to his disabled condition;

f)    loss of opportunity to obtain gainful employment.

g)    medical bills and pharmacy bills relating to the treatment of his physical injuries.

h)    legal fees to retain attorneys to defend him against the false criminal charges brought against him.

## COUNT I

### Excessive Force – Individual Defendants DAVIS, WAID AND FREDRICK - 42 U.S.C.§1983

96.    Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

97. The Individual Defendants, while acting under color of law, intentionally subjected Moses to excessive or unreasonable force, including lethal force, while arresting him as described above at paragraphs 35 through 52, and 62 through 64.

98. The Individual Defendants' unconstitutional acts were committed intentionally while they were acting under color of law, and with malice and reckless indifference to Moses' federally protected rights.

99. The Individual Defendants' wrongful conduct described above at paragraphs 13 through 52, and 58 through 64, violated Moses right to be free from the unreasonable use of force as guaranteed by the 4th Amendment to the United States Constitution.

100. As a direct and proximate result of the acts and omissions of the Individual Defendants, Moses suffered those injuries described above, including paragraph 95.

## COUNT II

### Illegal Seizure - Individual Defendants DAVIS, WAID AND FREDRICK - 42 *U.S.C. §1983*

101. Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

102.  As described above with particularity at paragraphs 35 through 52, and 62 through 64. Defendant Davis seized Moses without probable cause to arrest and without justification when he shoved Moses from behind, tased Moses from behind, punched and hit Moses in the face at his truck, kicked and punched Moses while he was on the ground, and when he handcuffed Moses while he was face down on the ground.

103.  Defendant Davis' actions were committed intentionally while he was acting under color of law.

103.  Defendant Davis' actions were committed with malice and reckless indifference to Moses' federally protected rights.

104.  Defendants Waid and Frederick's actions were committed intentionally, and with malice and reckless indifference to Moses' federally protected rights.

104.  As a direct and proximate result of the acts and omissions of the Defendant Davis, Moses suffered those injuries described above, including paragraph 95.

## COUNT III

### False Arrest - Individual Defendant DAVIS, WAID AND FREDRICK - 42 U.S.C.§1983

105.   Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

106.   As described above with particularity at paragraphs 93 through 94, ,the Individual Defendants made or caused the warrantless arrest of Moses without probable cause for the arrest in violation of Moses Fourth Amendment right to be free from unreasonable search and seizure.

107.   In order to effect and support Moses' arrest, the Individual Defendants gave false statements and submitted false reports of the incident in order to manufacture probable cause for Moses' arrest.

108.   The false arrest of Moses caused by the Individual Defendants was a result of the Individual Defendants' malice and reckless disregard for the truth, and was done in an effort to insulate the Individual Defendants from civil and criminal liability for the grievous constitutional and physical injuries they caused Moses.

109.   As a direct and proximate result of the acts and omissions of the Individual Defendants, Moses suffered those injuries described above, including paragraph 95.

## COUNT IV

**Excessive Force and Illegal Seizure – Supervisory Liability – CHIEF
ROBERSON – 42 U.S.C. §1983**

110. Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

111. As described in more detail above at paragraphs 65 through 94, Defendant Chief Roberson was personally involved in and responsible for the illegal seizure and excessive force used against Moses in that:

a)      He created or ratified policies and customs, and allowed the continuance of a policy and custom, under which Homewood police officers, including the Individual Defendants, were allowed, permitted and/or encouraged to illegally seize and/or use excessive force against ordinary citizens; and

b)      He was deliberately indifferent to the known risk that by his failure to supervise, train and discipline his subordinate officers, including the Individual Defendants, his subordinate police officers would likely cause constitutional deprivations and injury due to excessive force and illegal seizure as occurred in this particular instance.

112. As a direct and proximate result of the acts and omissions of the Defendant Roberson, Moses suffered those injuries described above, including paragraph 95.

## COUNT V

## Municipal Liability - CITY OF HOMEWOOD -  42 U.S.C. §1983

113.   Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

114.   The actions of Defendant City of Homewood, as described in more detail at paragraphs 65 through 94 above, constituted deliberate indifference to the likelihood and reality that Moses' Fourth Amendment Rights would be violated.

115.   Defendant City of Homewood, by and through Chief Roberson and his designees, were deliberately indifferent in customs and policies of lax supervision, inadequate hiring, inadequate training, inadequate evaluation, inadequate in-service, inadequate discipline, inadequate investigation into officer misconduct, and retention which caused the deprivation of Moses' constitutional rights under the Fourth Amendment as described throughout this complaint.

116.   As a direct and proximate result of the acts and omissions of the Defendant City of Homewood, Moses suffered those injuries described above, including paragraph 95

## COUNT VI

## Assault and Battery

117.   Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

118.   Homewood, by and through its agents, and the Individual Defendants acting in their personal capacities, assaulted and battered Moses  in violation of Alabama common law and in violation of state statutes and Homewood's mandatory regulations and policies.

119.   In assaulting and battering Moses, Homewood and the Individual Defendants violated Plaintiff's federal and state constitutional rights and violated state law and mandatory policies and regulations promulgated by Homewood.

120. In assaulting and battering Moses, Homewood and the Individual Defendants acted with neglect, carelessness or unskillfulness and/or acted willfully, maliciously, in bad faith, recklessly, beyond their authority or under a mistaken interpretation of the law.

121.   Though the Individual Defendants were acting in the line and scope of their employment with the Homewood Police Department, the Individual Defendants were not acting with discretionary authority as police officers when they assaulted and battered Moses.

122. The Individual Defendants assault and battery of Moses was done in a manner contrary to the Constitution of the United States and the Constitution of Alabama, and/or was done willfully, maliciously, fraudulently, in bad faith, beyond their authority or under a mistaken interpretation of the law.

123. Homewood authorized, ratified, and/or condoned the Individual Defendants' actions, thereby making them also liable for the injuries Moses sustained.

124. As a direct and proximate result of the acts and omissions of the Homewood and the Individual Defendants, Moses suffered those injuries described above, including paragraph 95.

## COUNT VII

### Negligent Hiring

125. Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

126. Defendants Homewood, Homewood Police Department and Roberson owed a duty to members of the public, including Moses, to conduct such due diligence as was necessary to assure that law enforcement officers employed by defendants were suitably prepared through education, training, experience and temperament to protect the rights of the public with whom they came in contact.

127. Davis, as demonstrated by his arrest and detainment of Stryker, is unfit for duty as a law enforcement officer. Homewood, the Homewood Police Department and Roberson knew or had reason to know that Davis was unfit for duty as a law enforcement officer. In hiring Davis as a law enforcement officer and providing him the means to arrest and detain Stryker in the manner alleged above, Homewood, the Homewood Police Department and Roberson breached its duty to Stryker.

128. As a direct and proximate result of the acts and omissions of the Homewood and Roberson, Moses suffered those injuries described above, including paragraph 95.

## COUNT VIII

### Negligent Training and Supervision

129. Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

130. Defendants Homewood, Homewood Police Department and Roberson owed a duty to the public to train and supervise its law enforcement officers in whatever manner was necessary so as to assure they served and protected the rights of the public with whom law enforcement came in contact.

131. Defendants Homewood, the Homewood Police Department and Roberson breached their duty to Stryker by failing to properly train and supervise Davis and thereby providing Davis the means to arrest and detain Stryker in the manner alleged above.

132. As a direct and proximate result of the acts and omissions of the Homewood Roberson, Moses suffered those injuries described above, including paragraph 95.

## COUNT IX

### Abuse of Process

133. Moses re-alleges and incorporates each and every allegation stated in the Allegations of Fact at paragraphs 1-95 of this Complaint as though fully set forth herein.

134. Homewood and the Individual Defendants, with malice, and for the ulterior purpose of manufacturing probable cause to support the arrest and criminal charges against Moses, and in order to escape criminal and civil liability themselves for the harm they caused Moses, wrongfully used the criminal court system process to serve their own personal purposes.

135. As a direct and proximate result of the acts and omissions of the Homewood and the Individual Defendants, Moses suffered those injuries described above, including paragraph 95.

### *Nature of the Relief Sought*

133.    Plaintiff requests and seeks judgment against one or more Defendants individually or jointly for the following:

a.    all compensatory damages as allowed by state and federal law;

b.    any special damages as allowed by state and federal law, as more particularly as shown as trial;

c.    damages for injuries caused by the deprivation of the constitutional rights under the United States Constitution;

d.    damages as allowed under Alabama law as the facts are shown;

e.    punitive damages against each Defendant individually under Alabama and federal  law;

f.    reasonable attorney fees, costs and expenses of litigation under 42 U.S.C. § 1988;

g.    any injunctive and declaratory relief to which Plaintiff may be entitled;

h.    any other and further relief so ordered.

Dated on this the 19th day of May, 2016

Respectfully submitted,

*/s/Alan B. Lasseter*
ALAN B. LASSETER (LAS007)

LASSETER LAW FIRM, P.C.
2100 Morris Avenue
Birmingham, AL 35203
Telephone:  (205)322-1411
Email: alan@lasseterlaw.com

*/s/LaVeeda Morgan Battle*
LAVEEDA MORGAN BATTLE (PRI026)

THE BATTLE LAW FIRM, LLC
501 Riverchase Parkway East Suite 100
Birmingham, AL 35244
(205) 322-1504
laveeda@battlelawfirm.com

<u>JURY DEMAND</u>

**Plaintiff hereby demands a struck jury for the trial in this cause.**

.

**<u>PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:</u>**

City of Homewood
1833 29th Avenue South
Homewood, Alabama 35209