FILED

2017 Jul-27  PM 04:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MOSES STRYKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:16-CV-0832-VEH** |
| | ) | |
| **THE CITY OF HOMEWOOD, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action filed by the Plaintiff, Moses Stryker, against the following Defendants: the City of Homewood, Alabama ("the City") and Officers Jason Davis, Brian Waid, and Frederick Blake. The individual Defendants are police officers with the City,[1] and are all sued in their individual capacities only. The Plaintiff alleges that the officers used excessive and unnecessary force in arresting the Plaintiff. Against the City and the individual Defendants, the Plaintiff sets out claims pursuant to 42 U.S.C. § 1983. (Counts One and Two). Against the individual Defendants, the Complaint also sets out Alabama state law claims of assault and battery (Count

---

[1] The individual Defendants were police officers at the time of the events described in the Amended Complaint. The Court does not know their current status.

Three), negligence (Count Four), and wantonness (Count Five).[2]

This matter comes before the Court on the Motions To Dismiss filed by the City (doc. 40) and Officers Waid and Blake. (Doc. 44). For the reasons stated herein, the motions will be **GRANTED IN PART** and otherwise will be **DENIED**.

## I.     STANDARD

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings

---

[2] Although state law claims against the City were also set out in the Amended Complaint, those claims were dismissed on July 7, 2017. (Doc. 65).

suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II.    ALLEGATIONS IN THE AMENDED COMPLAINT

The following allegations, to the extent pertinent to the instant motions, appear in the Amended Complaint:

> 11. At approximately 2 a.m. on May 23, 2014, Plaintiff and Musie Ibedingl, a truck driver Stryker was training for his employer, Swift Transportation, were making a delivery of goods to the Walmart Supercenter located in the Wildwood Shopping Center on Lakeshore Parkway in Birmingham, Alabama.

> 12. Stryker and Musie Ibendigl were in Stryker's 18-wheel tractor-trailer truck.

> 13. As they arrived at Wal-Mart, Ibedingl was driving.

> 14. Stryker switched places with Ibendigl in the Wal-Mart parking lot when it became apparent that Ibedingl could not maneuver the truck in the manner necessary to arrive at the loading dock.

15. A woman, Tammy Barnette, stopped her car in front of the truck and blocked its path.

16. Barnette refused to move out of the way and told Stryker that his truck had side-swiped her car and that she had called the police.

17. Even though they were in the jurisdictional area for the Birmingham police department, Homewood police officer Davis arrived several minutes later.

18. Davis told Stryker to move his truck to the back of the Wal-Mart lot which was well away from the lit area of the parking lot. Stryker asked Davis if they could remain where they were due to the lighting.

19. Davis became angry at Stryker for questioning his orders so Stryker complied by moving his truck.

20. Davis, Stryker and Ibedingl conducted a walk-around inspection of Stryker's truck and Davis commented that he saw no evidence indicating that the truck had collided with Barnette's vehicle.

21. Davis told Stryker and Ibedingl to wait by the truck until Birmingham police arrived since the alleged accident occurred outside of Homewood's police jurisdiction.

22. Stryker retrieved a camera from an "accident kit" in the truck provided by Swift Transportation, Inc. ("Swift"), the company for whom he was delivering freight.

23. Swift's policy required that in the event of an accident the driver use the kit's disposable camera to photograph any visible damage to the other vehicle.

24. Stryker walked with the camera toward Barnette's car to take a photographs of its condition.

25. Davis, who was outside of his police jurisdiction, intercepted Stryker

4

as he walked toward Barnette's car and became irate when he saw the camera in Stryker's hand.

26. When Stryker tried to explain to Davis that Swift policy required him to photograph the alleged damage, Davis threatened Moses that if Stryker said anything further Davis would "lock [his] ass up."

27. Davis shoved Stryker in the back as Stryker turned to walk back toward his truck.

28. Stryker put the camera in his pocket and Davis suddenly drew his service revolver and pointed it directly at Stryker's head and asked what Stryker was reaching for in his pocket.

29. Stryker told Davis he was merely putting the camera in his pocket and that he was going back to the truck as he was instructed.

30. Stryker asked Davis "Are you going to shoot me?", and Davis then put his gun away, pulled out his taser and shot the taser leads into Stryker's back delivering electrical current and shock to Stryker's person.

31. Stryker fell to the ground and the taser leads became dislodged.

32. Stryker saw Davis reloading his Taser to shock Stryker again, so in fear for his life, Stryker quickly crawled toward his truck.

33. Stryker reached his truck and began to climb the steps to the cab when Davis grabbed him from behind and attempted to pull Stryker down the stairs to the ground.

34. Stryker continued to fear for his life and held on to the truck.

35. Davis struck Stryker in the face and jaw multiple times with a blunt instrument causing Stryker to suffer a broken jaw.

36. Stryker managed to climb into the truck and lock the cab door and

Ibedingl, who remained outside the truck all this time, climbed into the passenger side and closed his door.

37. Stryker and Ibendigl intended to remain locked in the cab for their safety until the arrival of the Birmingham police who were allegedly on their way.

38. Davis broke the driver's side window of Stryker's truck, showering Stryker's face and eyes with fragments of shattered glass from the window.

39. Some debris from the window got in Stryker's eyes and caused him to be unable to see.

40. Davis went to the passenger side and opened the unlocked door of the cab and ordered Ibendigl out of the truck. Ibendigl complied.

41. Davis entered the passenger side of the truck and resumed his attempts to try to remove Stryker from the vehicle.

42. Davis sprayed pepper spray into Stryker's eyes and struck Stryker about his body.

43. Defendants Waid and Blake arrived shortly after Davis began his attempts to remove Stryker from the passenger side.

44. Defendants Davis, Waid and Blake all participated in dragging Stryker, who was still blinded by the glass debris and pepper spray in his eyes, from the cab of the truck.

45. Davis, Waid and Blake got Stryker to the ground and struck Stryker numerous times.

46. Stryker repeatedly yelled "I can't see" as Davis, Waid and Blake kicked and punched Stryker multiple times all over his head and upper extremity and stomped on his back causing injuries to Stryker's spine.

47. Stryker was ultimately handcuffed and dragged across the pavement until he was ultimately placed in a patrol car.

48. Stryker was transported by one of the Homewood police officers to UAB Hospital for medical treatment.

49. At [the] UAB hospital emergency room[,] staff removed pieces of glass from [Stryker's] face and eyes and confirmed that Stryker's mandible was badly broken and required emergency surgery.

50. Stryker's facial injuries required that he undergo surgery to his jaw and his doctors wired his jaw shut for approximately eight weeks in order to allow it to heal.

51. Stryker suffered injuries to his lower back and underwent multiple pain blocks and a surgical procedure in attempts to relieve his pain.

52. Due to his injuries, Stryker has not been able to return to his job as a truck driver and will not be able to return to work again due to the permanent nature of his back injuries.

* * *[3]

54. Stryker did not resist any attempts by Davis to arrest him before he was shoved, tased and beaten, and Stryker never threatened Davis or any other person with any harm.

* * *[4]

---

[3] The Court has here omitted the following conclusory statement: "53. Stryker was shoved, tased and then beaten by Davis for no justifiable reason."

[4] The Court has here omitted the following language because it is either conclusory, or legal argument inappropriate for the "facts" portion of the Amended Complaint:

55. The use of force by all of the Individual Defendants was unnecessary, unwarranted and excessive.

59. The Individual Defendants, including Davis, struck Stryker in the head with their fists and with blunt instruments numerous times . . ..[5]

(Doc. 39 at 3-8, ¶¶11-59).

## III.   ANALYSIS

### A.   <u>The Motion To Dismiss Filed by the City (Doc. 40)</u>

#### 1.   *The Specific Claim Against the City*

The only claim against the City appears in Count Two, which alleges, *inter alia*, that "the City permitted, ratified and authorized a policy, custom and practice that permitted the illegal use of excessive force." (Doc. 39 at 15, ¶89). The basis for

---

56. The law was clearly established prior to this incident that unreasonable force applied upon an ordinary citizen or suspect violates an individual's rights guaranteed by the Fourth Amendment to the Constitution.

57. The law was clearly established prior to this incident that a blow to the head of a citizen or criminal suspect may be considered deadly force and may not be used by a law enforcement officer unless:

  a. It is necessary to prevent their escape;
  b. the officer has probable cause to believe the suspect poses a serious threat of death or serious physical injury to officers or others.

58. The use of a blunt instrument (i.e. baton, firearm and/or a fist) to the head of a suspect by an officer constitutes the use of lethal force in that it carries the risk of serious and potentially deadly injury.

[5] The Court has here omitted the conclusory phrase "without justification." The Court has also omitted the following conclusory paragraph:

  60. The Individual Defendants' punches and strikes to Stryker's head with a blunt instrument was [sic] intentional, willful, and with callous indifference to the consequences of their actions.

this allegation is that the City failed to properly train and supervise its officers on the proper use of force in an arrest. (*See* doc. 39 at 15 (discussing the City's "years long practice of ignoring the inordinate volume of excessive force reports; refusing to investigate complaints of excessive force; refusing to require additional training to officers known to use unreasonable force; refusing to monitor and supervise problem officers; and refusing to discipline officers known to illegally use excessive force.").

The City argues that this count fails to state a claim upon which relief may be granted because: 1) it is barred by the applicable statute of limitations; and 2) it fails to allege facts which plausibly establish a claim under Section 1983. The Court will address each argument in turn.

### 2. *The Applicable Statute of Limitations Has Not Run*

For the reasons stated in this Court's opinion on Defendant Davis's motion to dismiss (doc. 66), the Section 1983 claim in Count Two is not barred by the applicable statute of limitations.

### 3. *The Plaintiff Has Plausibly Pled a Section 1983 Claim Against the City*

"A municipality can be liable under § 1983 for the unconstitutional actions of its employees only when the [city's] 'official policy' causes a constitutional violation." *Martin v. City of Macon, Georgia, et al.*, No. 16-16103, 2017 WL

2859512, at *2 (11th Cir. July 5, 2017) (citing *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (in turn citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))); *see also, Southern Atl. Cos., et al. v. Orange Cty. Sch. Bd.*, No. 16-15446, 2017 WL 2569905, at *3 (11th Cir. June 14, 2017) ("A municipality is not vicariously liable under § 1983 for the actions or omissions of an employee unless those actions 'may fairly be said to represent [the municipality's] official policy.'") (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978)). The Eleventh Circuit has stated:

> A plaintiff can . . . demonstrate official policy by showing a government policy of inadequate training or supervision. *Am. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami*, 637 F.3d 1178 (11th Cir.2011); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). "A plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (*citing City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197); *AFL–CIO*, 637 F.3d at 1187 (citations omitted).

> To establish that a city was "deliberately indifferent," a plaintiff must demonstrate that the municipality knew of the need to train in a particular area and that it made a deliberate choice not to take any action. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998). Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a

constitutional violation. [*Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011)]; *Gold*, 151 F.3d at 1350–52.

*Mingo v. City of Mobile, Ala.*, 592 F. App'x 793, 799–800 (11th Cir. 2014).[6]

The Plaintiff contends that the following allegations plausibly establish the City's deliberate indifference to the need to train its officers on the proper use of

---

[6] Very recently, Judge Bowdre, in this district, correctly summarized the law in this area as follows:

Recognizing that the "failure to train" and "failure to supervise" are often interrelated omissions, the Eleventh Circuit explained that the court's proper focus in addressing these interrelated claims is on the "element common to both claims: the alleged failure to train." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1555 (11th Cir. 1989). A city's failure to train a police officer rises to the level of a municipal custom or policy only in the "limited circumstances" when its failure shows a "'deliberate indifference' to the rights of its inhabitants" and the city policy causes the employees to violate a citizen's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 387, 389-91 (1989); *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, ... a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants."). To establish deliberate indifference, a plaintiff must show "'that the municipality knew of a need to train ... in a particular area and the municipality made a deliberate choice not to take any action.'" *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Gold*, 151 F.3d at 1350) (emphasis supplied).

The court reiterates that the mere fact that officers may be inadequately trained does not implicate municipal liability; to be deliberately indifferent, the City must have had notice prior to the acts made the basis of this suit of a need to train or supervise, and yet, failed to train and supervise despite that notice. Further, a causal link must exist between the deliberate indifference and the denial of the constitutional right. *See Lewis*, 561 F.3d at 1293.

*Stephens v. City of Tarrant*, No. 2:16-CV-274-KOB, 2017 WL 2797080, at *5–6 (N.D. Ala. June 28, 2017) (Bowdre, J.).

force:[7]

> 63. As of May 23, 2014, and for many years prior thereto, the City of Homewood established, permitted and ratified a policy, custom and practice among its police officers to unreasonably use excessive force during arrests, including routine arrests involving misdemeanors.

---

[7] The Plaintiff argues that "[d]ismissal under [Rule 12(b)(6)] is proper only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim.'" (Doc. 52 at 5 (quoting *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.*, 144 F.3d 732, 735 (11th Cir. 1998)) (emphasis added). Of course, it has been 10 years since the Supreme Court rejected the "no set of facts" approach, noting that that language "has earned its retirement." *See, Twombly*, 550 U.S. at 563. This Court also rejects the Plaintiff citation to *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (doc. 52 at 4), a Section 1983 case in which the Supreme Court stated that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (internal quotations of *Twombly*, 550 U.S. at 555, which in turn quoted *Conley*, 355 U.S. at 47, omitted). The Supreme Court's decision in *Erickson* has no bearing on this Court's analysis, as it was decided prior to *Iqbal*. *See, Spencer v. Virginia State Univ.*, 224 F. Supp. 3d 449, 456 (E.D. Va. 2016) (Hudson, J.), *appeal dismissed sub nom. ZOE SPENCER v. VIRGINIA STATE UNIVERSITY* (Dec. 9, 2016) (rejecting *Erickson* as inconsistent with *Iqbal*'s call for sufficient factual material, accepted as true, to state a claim for relief that is plausible on its face) (internal quotations and citations omitted); *Forst v. Live Nation Entm't Inc.*, No. CIV. 14-2452, 2015 WL 5545542, at *3, n. 3 (D.N.J. Sept. 18, 2015) (Thompson, J.) (rejecting *Erickson* because "it predates the Supreme Court's ruling in *Iqbal*, which more thoroughly outlines the controlling pleading standard and specifies that the complaint must contain sufficient facts for a court to reasonably infer misconduct."); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 53 (N.D.N.Y. 2009) (Suddaby, J.) ("[The 'specific facts are not necessary' language] in no way meant that all pleadings may achieve the requirement of giving a defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests without ever having to allege any facts whatsoever. There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).") (footnote omitted). To be clear, the Eleventh Circuit has stated that "[f]ollowing *Iqbal*, 'complaints in § 1983 cases must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 139 (11th Cir. 2011) (quoting *Randall v. Scott*, 610 F.3d 701, 708 n. 2 (11th Cir.2010)); *see also, Smith v. City of Sumiton*, 578 F. App'x 933, 937 (11th Cir. 2014)("Nor has Smith provided factual matter that would support a plausible claim for supervisory or municipal liability."); doc. 22 at 8, in *Pettway v. City of Homewood, et* al., 2:16-cv-932 ("As currently pleaded, Pettway's contentions . . . against the City fail, because they are devoid of any specific facts.").

64. Prior to May 24, 2014, the policies, customs and practices of encouraging excessive force at the Homewood Police Department was evidenced by a culture among Homewood police officers who did not concern themselves with the prospect of negative consequences or discipline for improper use of force because such consequences and disciplinary action were rare.

65. As evidence of this culture of tolerating, encouraging and ratifying the use of excessive force, the City took no steps to train, supervise or discipline officers who were the subject of a large number of reports to the City concerning instances where Homewood police officers:

      a.     bragged on social media about incidents of excessive force;

      b.     often joked with each other about beating suspects unnecessarily;

      c.     routinely filed use of force reports that omitted key facts to justify the force used;

      d.     had supervisors who merely reviewed use of force reports in a cursory instead of a critical manner; and

      e.     were routinely the subject of claims and lawsuits regarding the use of excessive force.

66. The City was made aware of facts prior to May 24, 2014, that its officers were part of a culture bred by the City's policies, customs and practices described above, wherein officers understood that they would not be disciplined even if litigation over their improper conduct revealed the need [for] disciplinary action.

67. The City's awareness of this culture of improper use of force was made apparent due to several lawsuits filed against the City and several Homewood police officers alleging or reporting excessive force.

Regardless of the negative outcomes of those several cases where Homewood officers were either adjudged to have used of excessive force, or after settlement when deposition testimony and discovery strongly indicated the use of excessive force, few if any of those officers was disciplined or received any training or warning.

68. In particular, the culture of encouraging the unnecessary use of force at Homewood Police Department was known to all officers, including Davis. Davis has been sued for excessive force on other occasions for improper acts he committed as a Homewood police [officer]. He has never been disciplined for his improper conduct, and this fact made plain to Davis that the City tolerates the custom and practice of allowing its officers to act improperly in applying the use of force without fear of being disciplined.

69. One example is that in 2012 Davis was sued by Marquita Jackson [] . . . for using excessive force against her by repeatedly putting a shotgun barrel to her head while he stood on her back and grinded her into the asphalt after she was handcuffed and lying face-down during a domestic call. The City and Davis settled Jackson's claims after discovery was complete. Davis was not disciplined or retrained by the City even though discovery materials [] showed that he angrily cursed Jackson, used racial epithets towards her, and all the while shoved a gun barrel into her face while she lay handcuffed on the ground causing her bruising and significant emotional distress.

70. In the several years prior to May 24, 2016, and in furtherance of the City's policies, customs and practices that encouraged the use of excessive force and the culture which supported those customs and practices, no police chief or City supervisor required meaningful investigations of citizen complaints. The City received more than a hundred citizen complaints in the years immediately preceding this May 24, 2014, [incident,] regarding improper use of force, and on those rare occasions when internal affairs did investigate any of those complaints, the findings were overwhelmingly in favor of the involved officer.

71. Prior to May 24, 2014, the City was aware that its primary

mechanism to detect problem officers who need training, supervision and discipline regarding the use of force was through its internal affairs investigations into citizen complaints and reports by fellow officers.

72. As of May 24, 2014, Homewood police officers, including Davis, were aware [] that citizen complaints regarding the use of force would not be investigated since the City police chiefs in the years leading up to this incident normally refused to require internal affairs to investigate complaints of excessive force.

73. On those occasions when complaints of the use of improper force were investigated by the City's internal affairs investigators, the investigators typically used a cursory procedure to investigate only the complainant, the involved officers and other Homewood officers who may have been present. Independent witnesses were rarely questioned, and if ever they were, their statements were not included or considered in reaching conclusions of investigations that, as a matter of practice, were overwhelmingly favorable to the accused officer.

74. The City's customs and practices that formed the culture of fostering excessive force by Homewood police officers as described above was further bolstered by that fact that the vast majority of the City's internal affairs investigations into excessive force complaints ignored unfavorable facts and, with only rare exceptions, almost always concluded that the accused officer's statement of facts were credible and that he should be either exonerated or the charges not sustained.

75. The City's police officers, including the Individual Defendants, were aware before May 24, 2014[,] of the culture at the City where internal affairs was not likely to investigate any citizen complaints of excessive force, and that if an investigation was done, it would be biased to support the officer.

76. Due to information disclosed during discovery in numerous lawsuits alleging excessive force against the City and its officers, the City was made aware that, while its officers were almost always exonerated by its own internal affairs investigation pre-suit, information

regarding specific incidents subsequently disclosed during litigation often showed that the officers used excessive force and that the internal affairs investigations into those incidents were woefully inadequate and biased.

77. The fact of biased and inadequate internal affairs investigations into excessive force claims against Homewood police officers revealed that the City's internal affairs investigators adhered to lax and incomplete investigations intended to produce results favorable to the City's officers. This was true not only generally among internal affairs investigations of Homewood officers, but also all instances of excessive force where he has been the subject of citizen complaints, statutory claims and lawsuits.

78. In the years immediately preceding May 24, 2014, the City received vast numbers of complaints regarding the unnecessary use of force by its officers in routine traffic stops and misdemeanor calls. Even so, only a few officers were ever disciplined while the vast majority were not disciplined, supervised or given additional training.

79. The City, through its police chiefs and supervisory command, failed to investigate, or otherwise approved each of large numbers of use of force incidents and/or complaints as "justified" each year and rarely disapproved of officer's conduct on average.

80. The City's culture of tolerance and ratification for the use of excessive force by its officers was so widespread and so permeated the manner in which Homewood police officers conducted traffic stops, misdemeanor calls and warrantless arrests that it became the policy, custom and practice of the Homewood Police department to violate the Fourth Amendment rights of citizens through the unnecessary use of excessive force on a regular basis without fear of discipline or termination.

(Doc. 39 at 8-13, ¶¶63-80) (footnote omitted).

Despite these factual allegations, the City argues that the above facts are not

specific enough to plausibly state a claim.[8] However, under *Iqbal*, "we begin by identifying conclusory allegations in the Complaint. Legal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679; *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir.2010)). In the instant case, the Plaintiff has not vaguely alleged "deliberate indifference," or merely stated, without supporting facts, that the City "knew of the need to train but chose deliberately not to take any action." Such allegations, without factual support, would be due no assumption of truth. *See*, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1329 (11th Cir. 2015)

---

[8] The City writes:

> To be certain about it, <u>nowhere</u> in the Amended Complaint is there the required "further factual enhancement" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) which plausibly establishes what Stryker concludes; that is, that Homewood's police officers and/or supervisors have (1) engaged in rampant instances of excessive force, (2) not been disciplined for proven instances of excessive force, (3) regularly joked or bragged about excessive force, (4) filed incomplete or false use of force reports, (5) routinely been the subject of claims and lawsuits about excessive force, (6) not received training on use of force, (7) received favorable treatment in the investigation of complaints of excessive force, or (8) disregarded a known or obvious consequence of any such things, and that such has resulted in a persistent, widespread, settled, and permanent practice of such things. The Amended Complaint is simply empty of the required facts to support these bald assertions and conclusions, much less facts demonstrating the "limited circumstances" in which a claim like Stryker's can "rise to the level of an official government policy for purposes of §1983" and meet the "stringent" deliberate indifferent standard of fault. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotations and citations omitted).

(Doc. 59 at 5) (emphasis in original).

("Although it contains the conclusory allegation that the Sheriff's Office was 'on notice' of the need to 'promulgate, implement, and/or oversee' policies pertaining to the 'use of force' appropriate for 'the seizure of mentally ill persons and their transportation to mental health facilities,' no facts are alleged to support that conclusion."); *Waters v. City of Geneva*, 47 F. Supp. 3d 1324, 1339 (M.D. Ala. 2014) (Watkins, J.) ("The allegation . . . that the City was 'aware' of Officer Hughes's 'propensity for violence,' absent some factual elaboration, is conclusory and insufficient to satisfy *Twombly*'s pleading threshold."); *Smith v. City of Sumiton*, No. 6:12-CV-03521-RDP, 2013 WL 3357573, at *3 (N.D. Ala. July 2, 2013) (Proctor, J.), aff'd, 578 F. App'x 933 (11th Cir. 2014) ("Plaintiff does not aver how Defendant City of Sumiton knew or should have known of Defendant Daughter's alleged prior incidents."). Instead, the Amended Complaint pleads several facts, which, accepted as true, would have put the City on notice of a need to train. Although they may not be pled with the level of specificity the city would like, there is no "heightened pleading" requirement in Section 1983 cases. *Hoefling v. City of Miami*, 811 F.3d 1271, 1276 (11th Cir. 2016).

In *Jackson v. City of Homewood, et al.*, 2:12-cv-4199, Judge Bowdre, of this district, persuasively dealt with this very issue in a case also involving an excessive force claim against Officer Davis. The Complaint in that case alleged

that Officer Davis'[s] unlawful actions were "pursuant to a City policy and custom" and [that]:

> Prior to the arrest of the plaintiff, the City permitted, encouraged, and ratified a pattern and practice of misconduct, including the use of excessive force, in that the City:
>
> > a. failed to discipline or prosecute or in any manner deal with known incidents of misconduct, including incidents involving the use of excessive force; and
> >
> > b. refused to investigate complaints of misconduct, including complaints of the use of excessive force, and instead officially claimed such incidents were justified and proper.

(Doc.14, at ¶ 42). Additionally, Ms. Jackson alleges that the "systematic failures and deficiencies are policies and customs of the City and caused the police officers of this municipality to believe that the use of excessive force and other misconduct would be tolerated and that complaints would not be honestly or properly investigated, with the foreseeable result that officers would unlawfully use excessive force against citizens." *Id*. at ¶ 43.

(Doc. 25 at 3, in *Jackson v. City of Homewood, et al.*, 2:12-cv-4199). The City had argued that the Complaint was devoid of factual support. Judge Bowdre denied the motion, writing:

> Viewed in the light most favorable to the Plaintiff, these allegations support the existence of a widespread pattern of similar violations of an individual's right to be free from excessive force. The Amended

19

Complaint alleges that the City knew about previous incidents of police officers using excessive force and permitted, encouraged, or even ratified such conduct.

Although the Amended Complaint in this case may toe the line of what is acceptable under *Iqbal*'s pleading standards, the City is still on fair notice of the claim against it in this instance. The federal courts operate on a notice pleading system, and *Twombly* and *Iqbal* have not changed the fundamentals of notice pleading under Rule 8. *See Meyer v. Snyders Lance, Inc.*, 2012 WL 6913724, *1 (M.D. Ga. 2012) (stating that *Iqbal* and *Twombly* "did not suggest that the Supreme Court intended to rewrite Rule 12(b)(6) or abandon notice pleading"). Ms. Jackson's Amended Complaint alleged sufficient detail to put the City on adequate notice of the claim asserted against it in Count III. Accordingly, the court will DENY the City's motion to dismiss Count III of the Amended Complaint.

(Doc. 25 at 7-8, in *Jackson v. City of Homewood, et al.*, 2:12-cv-4199). The Court

agrees with Judge Bowdre's approach, and holds that the allegations in the instant

complaint, which are more extensive that those in *Jackson*, are sufficient. The motion

to dismiss the City will be **DENIED**.[9, 10]

_____

[9] The City notes, correctly, that the two lawsuits cited by the Plaintiff – *Jackson v. City of Homewood, et al.*, 2:12-cv-4199 and *Pettway v. City of Homewood, et al.*, 2:16-cv-932 – both of which were filed in the Northern District of Alabama and alleged excessive force claims against Officer Davis and the City of Homewood (doc. 41 at 9), provide no support the Plaintiff's claim. "Courts may take judicial notice of public records, such as a pleading filed in another court, because such documents are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016) (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)). "However, judicial notice may be taken only to establish what those documents contain, not the veracity of their contents." *Id*. (citing *Bryant*, 187 F.3d at 1278). The Court takes judicial notice of the <u>allegation</u> that the incident in *Pettway* occurred on June 5, 2014 (*See* doc. 1 at 2, ¶6 in *Pettway v. City of Homewood*, 2:16-cv-00932-AKK), a date which was <u>after</u> the date of the conduct alleged in the instant case. Neither the conduct alleged in *Pettway*, nor the filing of the suit itself, could have put the City on notice, <u>before the date of the events of</u>

## B.      The Motion To Dismiss Filed by Officers Waid and Blake (Doc. 44)

the instant case, of the need to train on the use of force. *See MacMillan v. Roddenberry*, No. 5:08-CV-351-OC-10GRJ, 2010 WL 668281, at *7, n. 5 (M.D. Fla. Feb. 19, 2010) (Hodges, J.), *aff'd*, 432 F. App'x 890 (11th Cir. 2011) (and cases cited therein) (complaints made after the arrest at issue are not relevant to whether city was on notice of incidents of abuse); *Timmons v. Polk Cty. Sheriff's Office*, No. 8:09-CV-1190-T-17TGW, 2009 WL 4249553, at *2 (M.D. Fla. Nov. 25, 2009) (Kovachevich, J.) ("Plaintiffs complaint on pages B15–B19 merely lists incidents and grievances that allegedly occurred after his incident."); *Thomas v. City of Clanton*, 285 F. Supp. 2d 1275, 1283 (M.D. Ala. 2003) (Thompson, J.) ("Thomas . . . cannot demonstrate a 'pattern of constitutional violations ... such that the municipality knows or should know that corrective measures are needed' by relying . . . on . . . the Gomez complaint, which was filed six months after the incident involving Thomas.").

Similarly, the Court takes judicial notice that the allegations in *Jackson* have not been substantiated (*See* doc. 35 (Stipulation of Dismissal) in *Jackson v. City of Homewood et al*, 2:12-cv-04199-KOB), and thus the Plaintiff's reference to that case provides no support for the Plaintiff's claims. *See*, *e.g.*, *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998) (prior complaints must be shown to have been valid); *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("Brooks never demonstrated that past complaints of police misconduct had any merit."); *Montanez v. City of Orlando*, No. 614CV622ORL22TBS, 2015 WL 12778406, at *12 (M.D. Fla. Oct. 23, 2015) (Conway, J.), aff'd, 678 F. App'x 905 (11th Cir. 2017) ("Because Montanez has not presented any evidence that the allegations of false arrest and excessive force made in the two other federal lawsuits filed against Sgt. Parker had any merit, they cannot establish past police misconduct of which the City was, or should have been, aware, for the purpose of showing that the City had a custom or policy condoning or permitting such behavior."); *Tolbert v. Trammell*, No. 2:13-CV-02108-WMA, 2014 WL 3892115, at *5 (N.D. Ala. Aug. 4, 2014) (Acker, J.) ("The Eleventh Circuit has held that complaints of police misconduct alone, without a demonstration that such complaints have merit, do not establish a pattern of similar constitutional violations and do not give the city notice of police misconduct.").

In spite of these findings, the Court finds the remainder of the Plaintiff's allegations to be sufficient at this stage of the proceedings.

[10] The City adopts and incorporates the qualified immunity arguments made by Officers Waid and Blake in their motion to dismiss. (Doc. 41 at 25-26).  *See*, *Howell v. City of Lithonia*, 397 F. App'x 618, 621 (11th Cir. 2010) (noting that if no constitutional violation is shown, then there is no basis for municipal liability). As is discussed *infra* the Court has decided to allow the Plaintiff to amend to address the immunity issues. Accordingly, this issue will be address at a later time.

The Amended Complaint alleges that Waid and Blake violated the Plaintiff's constitutional right to be free of the use of excessive force in the course of an arrest. It sets out claims a claim under 42 U.S.C. § 1983 against these officers. (Count One). In addition, the Plaintiff claims that these officers committed the state law torts of assault and battery (Count Three), negligence (Count Four), and wantonness (Count Five). These officers argue first that Counts One, Four, and Five are barred by the applicable statute of limitations. Next, they argue that qualified immunity shields them from liability on the Section 1983 claim. Finally, Officers Waid and Blake argue that they have "peace officer" immunity which shields them from the state law claims in Counts Three, Four, and Five. The Court will address each argument in turn.

### 1.    *The Statute of Limitations on the Claims Against the Officers*

For the reasons stated in this Court's opinion on Defendant Davis's motion to dismiss (doc. 66), the Section 1983 claims against the individual Defendants are not barred by the applicable statute of limitations.  Furthermore, it is inappropriate, at this stage, to determine whether the statute of limitations on the state law claims has run.

### 2.    *The Officers Are Entitled to Qualified Immunity on the Section 1983 Claims*

Waid and Blake are sued only in their individual capacities. They contend that they are entitled to qualified immunity as to the Section 1983 claim asserted against

them. "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (internal quotations and citations omitted). "Qualified immunity is an immunity <u>from suit</u>." *Tapley v. Collins*, 211 F.3d 1210, 1214 (11th Cir. 2000) (emphasis added).[11] "To be entitled to qualified immunity, 'the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Holmes v. Hale, et al.*, No. 16-14712, 2017 WL 2804893, at *2 (11th Cir. June 28, 2017) (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007). If the official in question acted within his or her discretionary authority, "the burden shifts to [the plaintiff] to show that qualified immunity is not appropriate." *Holmes,* 2017 WL 2804893 at *2 (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). "To do that, he must allege facts showing that[:] [(1)] [the individuals] violated a constitutional right[,] [(2)] that was clearly established at the time of the alleged violation." *Holmes*, 2017 WL 2804893 at *2 (citations omitted). "Both elements of this test must be present for an official to lose qualified immunity,

---

[11] "The denial of qualified immunity on a motion to dismiss is an appealable interlocutory order." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009)). Qualified immunity "will be granted unless the conduct, considered in light of the law existing at that time, was so obviously wrong that it would not have been done except by an officer who was incompetent or in knowing violation of the law." *Chaney v. City of Orlando, FL*, 291 F. App'x 238, 243 (11th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 202, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) and *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1280 (11th Cir.2002)).

### a.    Discretionary Authority

Officers Waid and Blake have shown[12], and the Plaintiff does not dispute[13], that these officers were acting within their discretionary authority when they engaged in the conduct described in the Amended Complaint. Accordingly, the burden shifts to the Plaintiff to show whether

> "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150

---

[12] *See* doc. 45 at 6.

[13] *See* doc. 51 at 6.

L.Ed.2d 272 (2001). If a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Id*. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*.; *see also Marsh v. Butler County*, 268 F.3d 1014, 1031–33 (11th Cir.2001) (en banc).

*Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

> **b.    The Allegations in the Amended Complaint Do Not Establish that the Officers' Conduct Violated a Constitutional Right**

The Court first examines whether the facts pled in the Amended Complaint establish that Officers Waid and Blake violated a constitutional right of the Plaintiff. As to this part of the analysis, the Eleventh Circuit has explained:

> The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). In order to determine whether the amount of force used by a police officer was proper, a court must ask "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." [*Willingham v. Loughnan,* 261 F.3d 1178, 1186 (11th Cir. 2001).] The Supreme Court has held that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (internal quotations omitted)). Moreover, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at

25

396, 109 S.Ct. at 1871–72 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27, 88 S.Ct. 1868, 1880–83, 20 L.Ed.2d 889 (1968)).

The Supreme Court has established that, in order to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights, a court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, 109 S.Ct. at 1872. *See also, e.g., Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir.1986) (holding that, in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted). *Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.

*Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir. 2002) (footnote omitted).[14]

The Plaintiff argues that the crime for which Stryker was being arrested was

---

[14] Although the Plaintiff alleges in his Amended Complaint that the officers "violated Stryker's Fourth Amendment right to be free from the unreasonable use of force" (doc. 39 at 14, ¶84; *see also*, doc. 51 at 7), in his brief he writes that because

> "Waid and Blake do not raise in either their motion or brief that Stryker's Amended Complaint somehow failed to state a cosntituional [sic] violation (i.e., that the officers violated Stryker's Fourth Amendment rights through the unreasonable use of force against him), the only remaining inquiry for qualified immunity purposes is whether the law was 'clearly established.'"

(Doc. 51 at 7). This argument ignores established law which states that, once the officers establish that they acted within their discretionary authority, they need do nothing more to be entitled to qualified immunity. Instead, the burden shifts to the plaintiff "to show that qualified immunity is not appropriate." *Holmes,* 2017 WL 2804893 at *2. However, the Plaintiff goes on to cite and address the *Graham* factors. The Court will, therefore, treat that portion of the Plaintiff's argument as an attempt to show the violation of a constitutional right.

not severe. While the allegations in the Amended Complaint bear out that conclusion, there are no allegations in the Amended Complaint which establish that Waid and Blake <u>knew</u> that, and "[t]he only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). The Plaintiff argues that "Davis was called to the scene over police dispatch radio (that Waid and Blake could hear as well) to investigate a minor traffic incident." (Doc. 51 at 8 (citing doc. 39 (Amended Complaint) at 5)). However, the Amended Complaint in fact nowhere alleges that Davis was called "over the police dispatch radio," or that, even if he was, that <u>Waid and Blake</u> heard the call. Accordingly, the Court will not consider these factual allegations, as they are found only in Plaintiff's brief.

The Plaintiff also argues that

Plaintiff's factual allegations demonstrate that Stryker never posed a threat to Davis, but instead, that it was Davis was the aggressor. (Id., paras 27-35, 38, 41-42). Waid and Blake arrived while Plaintiff was in the cab of his truck temporarily blinded from glass fragments and pepper sprayed in his eyes, and was waiting for additional officers to arrive to protect him from more attacks by Davis. (doc. 39 paras. 34-39, 42-44).

* * *

As to the third criteria under the Graham test, nothing in the factual allegations indicate that Stryker resisted arrest, and as already stated, he was acquitted of resisting arrest charges at trial on October 21, 2016.

27

(Doc. 51 at 8). Again, however, this argument ignores that, when Waid and Blake arrived on the scene, Davis was still struggling to remove the Plaintiff from the cab of the truck. (Doc. 39 at 6, ¶43).[15] Officers Waid and Blake, along with Davis, then "dragged" Stryker from the truck (doc. 39 at 6, ¶44). The Plaintiff has alleged no facts, even in his brief[16], which establish that Officer Waid and Blake's conduct in dragging the Plaintiff from the truck based on the situation existing when they initially arrived on the scene violated the Plaintiff's Fourth Amendment right to free of excessive force. Thus, Officers Waid and Blake are entitled to qualified immunity for that conduct.

The Court's inquiry does not end there, however, because the Amended Complaint also alleges that Davis, <u>along with Waid and Blake,</u> then: moved Stryker to the ground and struck him several times (doc. 39 at 6, ¶45); and, while Stryker repeatedly yelled "I can't see," "kicked and punched Stryker multiple times all over his head and upper extremity and stomped on his back" (doc. 39 at 6, ¶46). He argues that during this time he was "attempting to comply and pleading with the officers to help him since he had been blinded by the pepper spray and glass in his eyes." (Doc.

---

[15] As noted by these Officers, this is "a stark contrast to a 'subdued, non-violent, non-resisting misdemeanor suspect [] on the ground and surrendering to a police officer's control,' as suggested in [the] Plaintiff's opposition brief." (Doc. 56 at 2 (quoting doc. 51 at 9)).

[16] For this reason, the Court will not allow the Plaintiff to amend his complaint yet again as to this conduct by these officers.

51 at 11 (citing doc. 39 (Amended Complaint) at 5-6, ¶¶37-39, 42-44, 46))); *see also,*

doc. 51 at 9 (arguing that the Plaintiff was not resisting and was "surrendering to a

police officer's control."). The problem with the Plaintiff's argument is that nowhere

in the Amended Complaint are facts pled which show that the Plaintiff was

"attempting to comply" or "pleading with the officers to help him," and "[i]t is

axiomatic that the complaint may not be amended by the briefs in opposition to a

motion to dismiss." *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104 (3d

Cir. 2016) (internal quotations and citations omitted); *see also*, *Hayes v. Whitman*,

264 F.3d 1017, 1025 (10th Cir. 2001) (same); *Dukes v. Deaton*, 852 F.3d 1035, 1046

(11th Cir. 2017) ("A plaintiff may not amend her complaint through argument in a

brief opposing summary judgment.") (internal quotations and citations omitted).

As noted above, the Supreme Court has stated that the reasonableness of the

force used is determined, in part, by "whether the suspect poses an immediate threat

to the safety of the officers or others, and whether he is actively resisting arrest or

attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Amended

Complaint is silent as to what the Plaintiff was doing at the time Waid and Blake

were allegedly using excessive force after Stryker was removed from the truck. In the

absence of any factual allegations establishing that these officers' use of force was

disproportionate to the Plaintiff's conduct, the Plaintiff has failed to carry his burden

of showing that these officer's actions were excessive, and thus they are entitled to qualified immunity.

That being said, the Eleventh Circuit has held that "'[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *Lee v. Alachua Cty., FL*, 461 F. App'x 859, 860 (11th Cir. 2012) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991)). The Court makes no judgment here as to whether the "facts" argued in the Plaintiff's briefs would be enough. However, that argument convinces the Court that, in a "Second Amended Complaint," the Plaintiff "might" state a claim which would survive the qualified immunity defense for this conduct by these officers, at least through the pleadings stage of this litigation. For that reason, the Court will allow the Plaintiff to amend his complaint one more time and accordingly will deny the motion to dismiss his Section 1983 claim against these officers as to post-removal-from-the-vehicle facts.

> **c.   The Plaintiff Has Also Failed To Carry His Burden of Showing that the Constitutional Right He Alleged Was Infringed Was Clearly Established.**

Assuming, for the sake of argument, that the Plaintiff <u>had</u> shown the violation of a constitutional right to be free from the force used by Waid and Blake <u>as currently alleged</u> in the Amended Complaint, the Plaintiff has failed to show that any such right

was clearly established. That failure arises from the same lack of facts in the Amended Complaint stating what the Plaintiff's conduct was. The Eleventh Circuit has noted:

> There are two ways for a party to show that the law clearly established that a particular amount of force was excessive. The first is to point to a "materially similar case [that has] already decided that what the police officer was doing was unlawful." *Willingham*, 261 F.3d at 1187. Because identifying factually similar cases may be difficult in the excessive force context, we have recognized a narrow exception also allowing parties to show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Priester*, 208 F.3d at 926 (*quoting Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir.1997)). Under this test, the law is clearly established, and qualified immunity can be overcome, only if the standards set forth in *Graham* and our own case law "inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." *Id*. (*quoting Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir.1993)).

*Lee*, 284 F.3d at 1198–99. In his brief, the Plaintiff chooses the former approach, arguing "'[t]here is substantial case authority in the Supreme Court and this Circuit clearly establishing that harming a suspect after that suspect is compliant, cooperative, under control, or otherwise subdued is gratuitous and, therefore, constitutionally excessive.'" (Doc. 51 at 10 (quoting *Merricks v. Adkisson*, 785 F.3d 553, 563 (11th Cir. 2015)).[17]

---

[17] Although the Plaintiff does not technically "quote" the language from *Merricks*, he does cite it word for word, and then cites to that case, so the Court treats it like a quote.

However, as the Eleventh Circuit has noted:

> "In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable." *Belcher* at 1395. Instead, the plaintiffs must draw the court's attention toward a more particularized and fact-specific inquiry showing that there existed sufficient case law establishing the contours of their constitutional rights that the unlawfulness of the defendants' conduct would have been apparent to a reasonable official in the same circumstances. *See id.* at 1395. If no such case law exists, then the defendants are entitled to qualified immunity. *Id.*

*Sanders v. Howze*, 177 F.3d 1245, 1250 (11th Cir. 1999). None of the cases cited by the Plaintiff are factually similar to the instant case. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008) ("We hold that a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established[.]"); *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) ("[A] reasonable officer could not possibly have believed that he then had the lawful authority to take her to the back of her car and slam her head against the trunk after she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed. Once an arrestee has been fully secured, such force is wholly unnecessary to any legitimate law enforcement purpose."); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) ("[O]fficers used excessive force in beating Slicker even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way."); *Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997) (not unreasonable for

officer to think that he was entitled to use some force to put arrestee into cuffing posture, but assuming arrestee was offering no resistance at all, the level of force used was unnecessary "to restrain even a previously fractious arrestee.").[18] For this reason as well, the officers are entitled to qualified immunity for the Section 1983 claim against them related to removal of the Plaintiff from the vehicle. Accordingly, their motion to dismiss will be granted as to such conduct for this alternative reason. Still, as noted above, because the Court is allowing the Plaintiff to amend his complaint again, it will deny their motion to dismiss his Section 1983 claim to the extent it is based on their post-removal-from-vehicle conduct.

### 3.    *Peace Officer Immunity on the State Law Claims*

---

[18] The Plaintiff also argues:

> The law of the Eleventh Circuit has "clearly established" that "government officials may not use gratuitous force against a prisoner or against a [suspect] who has already been subdued…". (*see Harris v. Chapman*, 97 F. 3d. 499, 505-06 (11th Cir. 1996); *Davis v. Locke*, 936 F. 2d 1208, 1212-13 (11th Cir. 1991); *Perry v. Thompson*, 786 F. 2d. 1093 (11th Cir. 1986).

(Doc. 51 at 10). The Court does not find the cases cited, which are all Eighth Amendment cases concerning individuals who were already incarcerated, to be persuasive. *See, Harris v. Chapman*, 97 F.3d 499, 501 (11th Cir. 1996) (correctional officers forcibly removed inmate from his cell and had his hair cut, allegedly while beating him and using racial slurs); *Davis v. Locke*, 936 F.2d 1208, 1210 (11th Cir. 1991) (inmate confined in a dog cage with his hands shackled behind his back when correctional officers allegedly grabbed him by his ankles and pulled him from the dog cage, causing him to land on his head); *Perry v. Thompson*, 786 F.2d 1093, 1093–94 (11th Cir. 1986) (while correctional officers forcibly carried inmate to barber shop to be shaved, the officers struck him in the face, head, shoulder, arms and legs with their hands and that while he was down on the floor in the hallway they kicked him in the sides, ribs, back and head). In addition, as noted above, the facts of the Amended Complaint in its current form do not establish that the Plaintiff was "subdued."

The officers next argue that the state law claims against them in Counts Three, Four, and Five must be dismissed because they are entitled to so-called "peace officer immunity" as set out in Alabama Code § 6-5-338(a) which provides, in pertinent part, that "[e]very peace officer . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a).

Very recently, in *Ex parte City of Homewood*, No. 1151310, 2017 WL 1101601 (Ala. Mar. 24, 2017), the Alabama Supreme Court explained that "[t]he restatement of State-agent immunity as set out by this Court in *Ex parte Cranman*, [792 So.2d 392 (Ala. 2000)], governs the determination of whether a peace officer is entitled to immunity under § 6–5–338(a)." *Ex Parte City of Homewood*, 2017 WL 1101601 at *4 (internal quotations and citations omitted) (brackets in original). In *Cranman*, the Alabama Supreme Court noted that

> [a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons. . . . Notwithstanding anything to the contrary in the foregoing statement . . . a State agent shall not be immune from civil liability in his or her personal capacity (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or (2) when the State agent

34

acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) *holding modified by Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006). In *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006) the Alabama Supreme Court noted that "the peace officers' immunity statute does not limit the availability of immunity to 'enforcement of the criminal laws,'" and modified the holding in *Cranman*, to the extent it is applied to peace officer immunity. *Hollis*, 950 So. 2d at 309. Specifically, the Court amended the language which extended immunity for "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons," to add "or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6–5–338(a), Ala.Code 1975." *Id.*

Similar to the qualified immunity analysis discussed above, the peace officer immunity analysis is a burden shifting process. A peace officer asserting immunity initially bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the peace officer to immunity. *Ex Parte Homewood*, 2017 WL 1101601 at *4. To carry that burden, peace officers "must establish (1) that they were peace officers (2) performing law-enforcement duties at the time of the accident

and (3) exercising judgment and discretion." *Id.* "If they can do so, the burden then shifts to [the plaintiff] to show that one of the *Cranman* exceptions applies." *Id.*

First, from the allegations in the Amended Complaint, it is clear that the officers were peace officers performing law-enforcement duties at the time of the accident.[19] Accordingly, the Court finds that the first two of the three requirements to satisfy these officers' burden are met.

The third requirement is somewhat tricky. In *Ex Parte Homewood*, the Alabama Supreme Court's most recent pronouncement on this issue, the Court analyzed it as "whether the officers were exercising proper judgment and discretion." *Id.* at *5 (emphasis added). This statement implies that it is more than the "discretionary function test" from the qualified immunity analysis. In other words, the court does not examine the type of conduct at issue, in this case an arrest, and then pronounce whether or not it is a type which is ordinarily considered to be "discretionary." Instead, in examining this requirement, the Court is tasked with looking at each officer's particular conduct under the under circumstances and determining whether it was "proper."

The Court's analysis in *Ex Parte Homewood* backs that view. In that case, the

_____

[19] In their briefs, the officers do not acknowledge the burden-shifting framework set out above. While they do not explicitly address their burden, the Court will consider the arguments they make as their attempt to satisfy it.

Court first noted that "arresting or attempting to arrest an individual is a discretionary function." *Id.* at *5 (citing *Hollis*, 950 So.2d at 309). It then wrote:

> It is undisputed that Officer Clifton and Officer Davis pursued Fuller's vehicle in an attempt to arrest Fuller and Mines for allegedly shoplifting. Additionally, the video recording establishes that the officers were engaged in a high-speed pursuit of Fuller's vehicle, that Fuller was driving recklessly, that no law-enforcement vehicle made any contact with Fuller's vehicle during the pursuit, and that no law-enforcement vehicle was near Fuller's vehicle when Fuller attempted to turn onto Oxmoor Road and struck a light pole and another vehicle. The video recording demonstrates that the officers were exercising discretion and judgment during the pursuit of Fuller's vehicle. *See Doran v. City of Madison*, 519 So.2d 1308, 1314 (Ala. 1988)(quoting *Madison v. Weldon*, 446 So.2d 21, 28 (Ala. 1984), quoting in turn *City of Miami v. Horne*, 198 So.2d 10, 13 (Fla. 1967))(" ' "The rule governing the conduct of [a] police [officer] in pursuit of an escaping offender is that he must operate his vehicle with due care and in doing so he is not responsible for the acts of the offender. Although pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape." ' (Emphasis added.)"). Therefore, Officer Clifton and Officer Davis satisfied their burden of showing the third-factor for immunity.

*Id.* at *5; *see also*, *Ex parte Harris*, 216 So. 3d at 1210 (examining plaintiff's argument that the officer in arresting her was not engaged in a discretionary function when he arrested plaintiff because he lacked the lawful authority to arrest her); *Telfare v. City of Huntsville*, 841 So. 2d 1222, 1229 (Ala. 2002) (arrest on misdemeaner offense not committed in officer's presence not a lawful arrest and therefore officer was not engaged in a "discretionary function"); *but see*, *Ex parte*

*Brown*, 182 So. 3d 495, 504 (Ala. 2015) (burden of showing "discretionary function satisfied where officer's affidavit established that he acted "in the line and scope of his employment as a law-enforcement officer responding to a BOLO to apprehend and arrest an individual suspected of theft."); *Ex parte Coleman*, 145 So. 3d 751, 758 (Ala. 2013) (simply noting that defendant was "a peace officer entitled to the immunity established in § 6–5–338(a) and that at the time of the accident he was performing a function—responding to an emergency call—that entitles [him] to immunity"); *Walker v. City of Huntsville*, 62 So. 3d 474, 498 (Ala. 2010) (parties are engaged in "discretionary function" when they "were not discharging duties pursuant to detailed rules, regulations, or checklists," but "were, instead, exercising judgment with respect to [the] arrest and performing a discretionary function in the line and scope of their law-enforcement duties within the meaning of § 6–5–338."); *Downing v. City of Dothan*, 59 So. 3d 16, 20 (Ala. 2010) ("The City of Dothan argues that it is entitled to State-agent immunity because, it says, its police officers were exercising a discretionary function in deciding whether to arrest Farmer for driving under the influence. There is no question that the City of Dothan met its burden because, on the day in question, its police officers were engaged in a law-enforcement function for which State-agent immunity would be available.").

To require officers to establish at the initial stage that their conduct was proper

so as to deem it a discretionary function seems improper to this Court. Recall that if a peace officer satisfies his burden, he establishes a presumption of immunity. One of the ways that a plaintiff can rebut such a presumption is to show that the officer acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." The rule announced in *Ex Parte Homewood*, seems to turn these respective burdens around, requiring the <u>officer</u> to first prove that he was <u>not</u> acting "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." Nonetheless, this appears to be the rule.

Even under this rule, and consistent with its analysis of the Plaintiff's Section 1983 claims, the Court finds that these officers have shown a failure by the Plaintiff to allege facts that establish that, prior to the time when the Plaintiff had successfully been removed from the vehicle, they acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." Accordingly, the Court will grant as barred by peace officer immunity their motion to dismiss the Plaintiff's state law claims arising from such acts. However, because this Court will allow the Plaintiff to amend his complaint to provide more facts relating to the time period after he was removed from the vehicle, including what the Plaintiff's conduct was during that period, the Court finds it premature to determine

whether the officers have shown that their acts after such removal were done "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law", just as it is premature to determine whether the Plaintiff has alleged facts showing that they were acting "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." Accordingly, the officers' Motion To Dismiss the state law claims based on peace officer immunity will be denied as to such post-removal-from-vehicle acts.[20]

### 4.   *Plausibility of the State Law Claims*

The Alabama Supreme Court has stated:

> "The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.' " *Harper v. Winston County*, 892 So.2d 346, 353 (Ala.2004) (quoting *Ex parte Atmore Cmty. Hosp.*, 719 So.2d 1190, 1193 (Ala.1998)). However, this Court has stated: "In making the arrest, a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest." *Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala.1995), citing § 13A–3–27(a), Ala.Code 1975 ("A peace officer is justified in using that degree of physical force which he reasonably believes to be necessary, upon a person in order: (1) To make an arrest for a misdemeanor,

---

[20] Further, unlike qualified immunity, the Court is not sure that peace officer immunity is an appropriate issue to decide in the context of a motion to dismiss. The Court is open to any party's opinion's on this issue, and on the Court's interpretation of the party's respective burdens. Unfortunately, the parties have not adequately addressed these issues in the briefs filed to date.

violation or violation of a criminal ordinance ... unless the peace officer knows that the arrest is unauthorized.").

*Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010). For the same reasons that the Plaintiff has failed to show excessive force as to his removal from the vehicle and thus has failed to overcome the defense of qualified immunity for his Section 1983 claim arising out of that conduct, his claim for assault and battery <u>as to that conduct</u> also fails. *See Walker*, 62 So. 3d at 494 (finding assault and battery claim in remanded state court case barred by *res judicata* after the federal court had determined that the force used in the arrest was not excessive because "[t]he issue decided by the federal court is . . . identical to the issue raised by [the] assault and battery claim."). Similarly, as the officers note in their initial briefs,

> the negligence and wantonness claims fail because as a matter of law, it is reasonable and not misconduct – either the negligent or wanton kind- for a police officer to use a constitutional amount of force in effecting an arrest.

(Doc. 45 at 15).[21]

Accordingly, and consistent with its analysis of the Plaintiff's Section 1983 claims against these officers, the Court will grant the officers' Motion To Dismiss as to his state law claims against them related to his removal from the vehicle but will deny it as to their post-removal-from-vehicle conduct.

---

[21] The Plaintiff does not respond to this argument.

**IV.    CONCLUSION AND ORDERS**

For the foregoing reasons, the motions to dismiss are **GRANTED IN PART** and are otherwise **DENIED**. Specifically, the City's motion is **DENIED**. The officers' motion is **GRANTED** as to all of the Plaintiff's claims relating to his removal from the vehicle and otherwise is **DENIED** without prejudice. The Plaintiff may file an Second Amended Complaint within 14 days which addresses only the deficiencies noted herein. Should the Plaintiff fail to timely file a Second Amended Complaint, the Court will dismiss all of Plaintiff's claims against Officers Waid and Blake.

**DONE** and **ORDERED** this 28th day of July, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

42